**SO ORDERED.**

**SIGNED this 18th day of August, 2022.**



*Lena Mansori James*
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION

IN RE:

**GRATA CAFE, LLC,**                                             CASE NO.: 22-80071-LMJ
                                                                 CHAPTER 11

        **DEBTOR**

### INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND NOTICE AND TIME FOR FURTHER HEARING

THIS MATTER came on for hearing before the above signed Bankruptcy Judge presiding on the 8th day of August, 2022, upon the Debtor's Motion for Authorization to Use Cash Collateral pursuant to 11 U.S.C. §363 ("Cash Collateral Motion"), Bankruptcy Rules 4001, 6003, and 9014 and other applicable sections of Title 11 of the United States Code and United States Bankruptcy Rules filed March 22, 2022 [Docket No: 43]; Philip Sasser appeared on behalf of the Debtor and Robert Price appeared on behalf of the United States Bankruptcy Administrator. The Debtor's principal, Jerome Radford, Jr., was also present at the hearing and testified.

Having considered the matter set forth in the Cash Collateral Motion and all arguments of counsel, the Court makes the following FINDINGS OF FACT AND CONCLUSIONS OF LAW:

1.     The above captioned Debtor filed a voluntary petition under Title 11, Chapter 11 of the United States Bankruptcy Code on March 8, 2022 (the "Petition Date"). Since the filing, the Debtor has operated as a Debtor-in-Possession.

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1334. Under 28 U.S.C.§ 157(a), the United States District Court for the Middle District of North Carolina has referred this case and this proceeding to this Court by its Local Rule 83.11. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) in which this Court has constitutional authority to enter final orders and judgments. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Grata Cafe was established in 2021. The sole member-manager is Jerome "Jay" Radford, who started the company. The main focus of the Debtor's business is a breakfast, brunch, and lunch café in the Carr Mill shopping center in Carrboro, North Carolina. The Debtor entity was formed in early 2021 and entered into a lease agreement for the café space in April 2021. Extensive delays in opening the café and construction costs, followed by a depressed restaurant environment due to the COVID-19 pandemic, forced the Debtor to incur significant debt, both from institutional lenders and from his wife, Rachel Radford's business, Ceremony Salon. Since the filing of this case, business has improved.

4.      On or about June 24, 2021, the Debtor and CFG Merchant Solutions ("CFG") entered into a loan and security agreement. The loan was secured by a blanket lien on all the Debtor's assets "now or hereafter acquired" and perfected by UCC Financing Statement  20210084467F filed with the North Carolina Secretary of State. The Debtor believes the balance of the CFG loan to be approximately $12,000.

5.      On or about September 13, 2021, the Debtor and Green Grass Capital ("Green Grass") entered into a loan and security agreement. The loan was secured by a blanket lien on all the Debtor's "present and future accounts" and perfected by UCC Financing Statement  20210123874A filed with the North Carolina Secretary of State. The Debtor believes the balance of the Green Grass loan to be approximately $3,000.

6.      Debtor owns equipment, furniture, fixtures, and a rotating balance of funds based on restaurant sales. As of the Petition Date, the Debtor has cash on hand in a bank account in the amount of $500 and cash of $200.

7.      CFG and Green Grass are believed to have an interest in cash collateral as it is defined in 11 USC §363(a).

8.      The use of cash collateral is necessary to allow the Debtor to pay its operational needs including the cost of maintaining the business, payment of adequate protection payments, and other normal expenses incurred in the ordinary course of the Debtor's business and as a result of the filing of the Chapter 11 proceeding. At this time, the Debtor is unable to obtain unsecured credit to enable it to properly obtain the necessary funds for operation of the business and further anticipates it will be on a C.O.D. or cash only basis in the Chapter 11 proceeding with its vendors and suppliers. As a result, unless the Court authorizes the use of cash collateral, irreparable damage and injury will be caused to the Debtor, its creditors and all other parties in interest.

9.      The Debtor has offered to provide to CFG and Green Grass (the "Secured Parties") the following adequate protection for its use of cash collateral:

> Only to the extent of the diminution in value of the cash collateral, the Secured Parties shall be granted a security interest in post-petition property of the estate of the same kind in which each held a security interest pre-petition and having the same priority and rights in the collateral as it had pre-petition. Further, the Debtor shall preserve, protect, maintain, and adequately insure all its assets and continue to operate in the ordinary course of business thereby generating further restaurant sales.

10.      The Debtor has requested the use of cash collateral to maintain its viability as a business. Attached hereto and incorporated herein by reference, identified as Exhibit A, is a projected monthly budget for August 9, 2022 through September 8, 2022. This illustrates the viability of the

Debtor and the anticipated use of cash collateral.

11.     If the Debtor is not authorized to use cash collateral, there may be irreparable damage caused to the Secured Party's collateral and the estate.

12.     It is appropriate to authorize the Debtor to continue to use the cash collateral, under 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 6003, on an interim basis and pursuant to the Budget, for its ordinary and reasonable operating expenses, which shall include payment of reasonable and necessary payroll and all standard and reasonable operating expenses.

13.     The interests of the Secured Parties in the cash collateral will be adequately protected on an interim basis by the adequate protection afforded by the terms of this Order.

14.     It is in the best interest of the Debtor, the Secured Parties, the unsecured creditors, and all other parties in interest for the Court to authorize the continued use of cash collateral by the Debtor for the purposes and on the terms stated herein.

Now, upon the Motion, the record before the Court, and sufficient cause appearing, and as no party has objected to the Motion,

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED**:

1.     Pending further orders of this Court, the Cash Collateral Motion is GRANTED on an interim basis upon the terms and subject to the limitations set forth in this Order.

2.     The Debtor is authorized to use the cash collateral in the ordinary course of Debtor's business pursuant to the Budget attached hereto as Exhibit A and incorporated herein by reference through the earliest of (i) the entry of a final order authorizing the use of cash collateral, or (ii) the entry of a further interim order authorizing the use of cash collateral, or (iii) September 8, 2022 or (iv) the entry of an order denying or modifying the use of cash collateral, or (v) the occurrence of a Termination Event, as defined below (the "Usage Period").

3.     The Debtor is only authorized to use cash collateral for the actual and necessary expenses of operating the Debtor's business and maintaining the cash collateral pursuant to the Budget. The Debtor shall not voluntarily contract for any administrative expense claims other than as set forth in the Budget or authorized by Court order. Unless otherwise authorized by order of this Court, the Debtor shall not use cash collateral for payment of any pre-petition indebtedness or obligations of, or pre-petition claims against, the Debtor.

4.     Only to the extent of the diminution in value of the cash collateral of the Secured Party, pursuant to and consistent with 11 U.S.C. § 363(e) and § 361, the Secured Parties are hereby granted a post-petition replacement lien in Debtor's post-petition property of the same type which secured the indebtedness of the Secured Party pre-petition, with such liens having the same validity, priority, and enforceability as the Secured Party had against the same type of such collateral as of the Petition Date. The lien of the Secured Party in post-petition collateral is and shall be, without any further action by the Secured Party, deemed perfected to the extent the pre-petition liens and security interests were valid, perfected, enforceable, and non-avoidable as of the Petition Date; provided however, that nothing in this Order shall be deemed to grant the Secured Party a post-petition lien on assets, if any, in which it did not possess a valid, perfected, enforceable, and otherwise unavoidable pre-petition lien. The post-petition liens and security interests provided for herein shall survive the

term of this Order to the extent the pre-petition lien was valid, perfected, enforceable, and non- avoidable as of the Petition Date.

5      The security interests and liens herein granted to the Secured Parties: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of the Secured Parties on the Petition Date, if any; and (ii) shall secure the payment of the indebtedness owing to the Secured Party in an amount equal to the aggregate cash collateral used or consumed by the Debtor.

6.     During the Usage Period the Debtor is not required to make adequate protection payments to the Secured Parties.

7.     The Debtor shall preserve, protect, maintain and adequately insure all its assets and continue to operate in the ordinary course of business.

8.     During the period this Interim Order Authorizing Limited Use of Cash Collateral is in effect, the Debtor is authorized to make expenditures for expenses as outlined in Exhibit A. The Debtor is authorized to make additional expenditures on any one particular expense line item, not to exceed ten percent (10%) of such line item, should the need arise. However, under no circumstance shall the Debtor expend greater than ten percent (10%) of the overall Budget without prior written approval of the Bankruptcy Administrator. The Debtor is not authorized to make expenditures on any expense line item exceeding ten percent (10%) of the budgeted amount without prior written approval from the Bankruptcy Administrator.

9.     Beginning on Tuesday April 5, 2022, and by 5:00 p.m EST on each subsequent Tuesday during the Usage Period, the Debtor shall provide to the Bankruptcy Administrator, and to any requesting Secured Party, a weekly budget to actual report, reflecting the actual income received and the expenses incurred during the previous calendar week (preceding Monday through Sunday) compared to the Budget attached hereto. In addition to this information, the Debtor is to provide the Bankruptcy Administrator with proof that federal and state withholding taxes have been paid on or before the dates specified on the Budget attached hereto.

10.    The Debtor is also instructed to segregate in a designated DIP account all federal and state payroll withholding taxes at the time that a payroll is paid to its employees.

11.    As additional adequate protection, the Debtor shall keep all of the Debtor's personal property insured for no less than the amounts of the pre-petition insurance and maintain appropriate workers compensation and general liability insurance . The Debtor shall timely pay all insurance premiums related to any and all of the collateral securing the claims of the Secured Parties.

12.     The findings, conclusions, or orders set forth herein are made as to all parties on an interim basis, shall not constitute final decisions of this Court on any legal or factual issue, and are without prejudice to the right of any party to raise, contest, or seek the same or a different outcome at any subsequent hearing.

13.     All professional fees are subject to approval of the United States Bankruptcy Court.

14.     These obligations of the Debtor are continuing in nature, shall survive the term of this Order, and shall remain in effect until the earlier of (collectively a "Termination Event"):

(i)     The effective date of any confirmed Chapter 11 plan in this proceeding;
(ii)    Conversion of this case to another Chapter of the Bankruptcy Code or removal of the Debtor from possession;
(iii)   The entry of further orders of the Court regarding the subject matter hereof;
(iv)    Dismissal of this proceeding; or
(v)     Occurrence of an event of default that is not timely cured under paragraph 14 below.

15.     The Secured Parties expressly are reserved the   right to seek further adequate protection of their interests and to seek a later determination that the provisions of this order do not constitute adequate protection of its interests. The Secured Parties expressly are reserved their rights to seek further relief under 11 U.S.C. §§ 361, 362 and 363. The Debtor expressly reserves its rights to seek additional use of cash collateral beyond the stated term of this Order.

16.     It shall be a default hereunder for any one or more of the following to occur:

(i)     The Debtor shall fail to comply with any of the terms or conditions of this Order;
(ii)    The Debtor shall use cash collateral other than as authorized in this Order;
(iii)   Cancellation or lapse of the Debtor's applicable insurance coverage; or
(iv)    Cessation of business operations by Debtor.

17.     Upon the service upon Debtor's counsel by a Secured Party of a written notice of any default, which shall be served upon (i) the Debtor and the Debtor's counsel by facsimile or electronic mail, and (ii) the Office of the Bankruptcy Administrator ("BA") (robert_e_price @ ncmba.uscourts.gov )by facsimile or electronic mail the Debtor shall have a period of five (5) business days to cure such default. In the event of a dispute over a default, the Debtor or BA shall seek an expedited hearing on the continued use of cash collateral.

18.     Debtor shall pay all applicable insurance premiums, taxes, and other governmental charges as they become due, and will make all tax deposits and file all

applicable tax returns on a timely basis.

19.     If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court, or by any other Court, or the use of cash collateral pursuant hereto is terminated, such stay, modification, vacation, or termination, shall not affect the validity and enforceability of any lien or priority authorized herein with respect to the Secured Parties and any indebtedness of Debtor to said creditors.

20.     Upon the occurrence of a Termination Event which is not timely cured under paragraph 15 above, unless otherwise ordered by this Court, the Debtor shall pay all expenses of operation incurred by the Debtor in their normal course of business up through the time of the termination of the Debtor's right to use cash collateral, provided that solely to the extent that such payments are in compliance with the Budget attached and this Order, and the liens granted herein shall be subordinate to a carve out for such expenses, including all fees pursuant to 28 USC 1930 (the "Trailing Expenses"). The aggregate amount of the Trailing Expenses shall not exceed one hundred ten percent (110%) of the aggregate amounts set forth in the Budget through such Termination Event.

21.     A further hearing on the Cash Collateral Motion and any objections and responses to the Cash Collateral Motion, shall be heard at 9:30 a.m. on September 8, 2022 at the United States Bankruptcy Court, located at 101 S. Edgeworth St, Greensboro, North Carolina, Courtroom 3 on the Second Floor.

22.     The Debtor shall serve a copy of this Order upon the Bankruptcy Administrator, the Secured Parties, and the creditors holding the 20 largest unsecured claims, and shall file a certificate of such service with the Clerk.

[END OF DOCUMENT]

**Exhibit A**

**Grata Café Budget**
**August 9 – September 7**

Revenue: $69,800

Expenses:
        NC Sales Tax: $7,444.81 (Paid current on August 15)
        Federal Payroll Taxes: $5,918.26 (Paid current on August 17)
        NC Withholding Taxes: $907 (Paid current on August 9)
        Rent: $8,170 (August 1 – September 7)
        Payroll: $19,000
        Electric: $1,512.42
        Gas: $500
        Spectrum: $134
        Worker's Comp Insurance: $140
        Liability and Property Insurance: $94
        Food: $11,000
        Beverage: $5,000
        Linen: $2,100
        Credit Card Processing: $1,814.80
        Coffee Equipment Lease: $277
        Equipment Maintenance: $500
        Dishwasher lease (Eco Lab): $1,720
        Orkin: $294
        Miscellaneous: $1,600
        Quarterly Fee: $598

Total Expenses: $68,721.29

Net: $1,078.71